635 S.E.2d 1 (2006)
In re R.L.C.
No. COA05-1120.
Court of Appeals of North Carolina.
September 5, 2006.
Attorney General Roy A. Cooper, III, by Assistant Attorney General Amy C. Kunstling, for the State.
Appellate Defender Staples Hughes, by Assistant Appellate Defender Constance E. Widenhouse, for respondent-appellant.
JACKSON, Judge.
Respondent appeals from an order adjudicating him delinquent for violating North Carolina's crime against nature statute, North Carolina General Statutes, section 14-177. The pertinent facts are as follows: O.P.M., a female juvenile, testified that her date of birth was 26 April 1991. O.P.M. said that she had known respondent for two or three years, going back to the sixth grade. She testified that they dated during her sixth grade year and through the next year. O.P.M. and respondent broke up during O.P.M.'s seventh grade year. When they were dating, respondent would come to the bowling alley to see O.P.M. while her parents bowled. *2 O.P.M. testified that she had a sexual relationship with respondent while they were dating. She and respondent had sexual intercourse in the back seat of O.P.M.'s mother's Suburban when it was parked in the bowling alley parking lot and O.P.M.'s parents were inside bowling. O.P.M. gave respondent a "blow job" on two occasions, by which she meant respondent put his penis in her mouth. O.P.M. stated that the last time she had sexual relations with respondent was about a year and a half before the hearing. At the time of the hearing, December 2004, O.P.M. was thirteen years old.
In October 2004, over one year after respondent and O.P.M. broke up, Detective Bobby Baldwin of the Alamance County Sheriff's Office was investigating a fight between O.P.M. and another student. Detective Baldwin learned of the alleged sexual activity at this time. O.P.M. gave respondent's name, and Detective Baldwin contacted respondent's mother by phone and asked her to have respondent call him. Respondent returned the call and agreed to come to the Alamance County Sheriff's Office at 9:00 a.m. on 14 October 2004.
Respondent arrived at the sheriff's office accompanied by his mother. Respondent stated that he was sixteen years old and that his date of birth was 1 June 1988. Detective Baldwin testified that defendant stated O.P.M. had given him a blow job and that these activities took place "probably near May and June, 2002, 2003." Detective Baldwin stated that he thought respondent indicated the blow job occurred two or three times.
The instant case was heard on 20 December 2004 and 6 January 2005 before Judge G. Wayne Abernathy in Alamance County District Court based upon three juvenile petitions. Each petition alleged that, between 1 July and 31 August 2003, respondent committed the offense of crime against nature with O.P.M. At trial, O.P.M. testified that she gave respondent a blow job only twice. Accordingly, the court dismissed one of the three petitions at the close of the evidence. In an order entered 15 February 2005, the court adjudicated respondent delinquent for committing two counts of crime against nature. The court also entered a juvenile disposition order, placing respondent on six months of unsupervised probation and ordering that respondent have no contact with O.P.M. Respondent appeals.
On appeal, respondent argues that North Carolina's crimes against nature statute is unconstitutional as applied in his case because the legislature could not have intended to criminalize non-procreative consensual relations between minors less than three years apart in age, while failing to criminalize procreative relations between the same minors. We disagree and find no error in the verdict below.
The crimes against nature statute has a long history in North Carolina. In 1819, the "vice of buggery" was reported as being in force in this State and had been illegal in England since the reign of Henry the Eighth in 1533. 1 Potter, Laws of North Carolina, 90 (1821). By 1837, the statute had substantially taken its current form.[1] In 1868, the death penalty was replaced by a prison term of five to sixty years. Public Laws 1868-69, c. 167, § 6. Subsequent amendments have altered the level of offense, but have not changed the substance of the offense significantly, which in current form reads: "If any person shall commit the crime against nature, with mankind or beast, he shall be punished as a Class I felon." N.C. Gen.Stat. § 14-177 (2005).
Our State Supreme Court has found it "manifest that the legislative intent and purpose of [section] 14-177 . . . is to punish persons who undertake by unnatural and indecent methods to gratify a perverted and depraved sexual instinct which is an offense against public decency and morality." State v. Stubbs, 266 N.C. 295, 298, 145 S.E.2d 899, 902 (1966). The act of fellatio was first recognized by our courts as a "crime against nature" in State v. Fenner, 166 N.C. 247, 249, *3 80 S.E. 970, 971 (1914) ("We are [of the] opinion that under our statute having carnal knowledge of another by inserting the private parts in the mouth is indictable.").
Prior to the United States Supreme Court decision in Lawrence v. Texas, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), this Court held the statute constitutional when applied to fellatio between an adult man and an adult woman, even in private. State v. Poe, 40 N.C.App. 385, 252 S.E.2d 843 (1979). However, in Lawrence, the Court "held that a Texas law prohibiting `deviate sexual intercourse' with a member of the same sex violated the due process clause, where the individuals charged were adults engaging in consensual, private sexual activity." State v. Whiteley, 172 N.C.App. 772, 776, 616 S.E.2d 576, 579 (2005) (citing Lawrence, 539 U.S. at 578, 123 S.Ct. at 2483-84, 156 L.Ed.2d at 525). Thus, since Lawrence, it is unconstitutional to apply section 14-177 to such private activity between consenting adults. See Whiteley, 172 N.C.App. at 779, 616 S.E.2d at 581. Although its applicability has changed, the legislative intent behind the crimes against nature statute has not.
The Supreme Court's holding in Lawrence specifically limited the scope of the decision, by stating:
The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve public conduct or prostitution. . . . The case does involve two adults who, with full and mutual consent from each other, engaged in sexual practices common to a homosexual lifestyle. The petitioners are entitled to respect for their private lives. The State cannot demean their existence or control their destiny by making their private sexual conduct a crime.
Lawrence, 539 U.S. at 578, 123 S.Ct. at 2484, 156 L.Ed.2d at 525 (emphasis added). Thus, only private conduct, out of public view and between consenting adults is deemed protected by Lawrence. The majority specifically cautioned against reading the Court's holding too broadly. Id. at 578, 123 S.Ct. at 2483-84, 156 L.Ed.2d at 525-26.
North Carolina's rape statute has a similar past to that of our crimes against nature statute. It, too, was incorporated into our criminal statutes in 1819 from the English law. 1 Potter, Laws of North Carolina, 92 (1821). By 1837, carnal knowledge of a female under ten years of age, or of a female ten years of age or older by force or against her will, was punishable by death. N.C.Rev. Stat. ch. 34, § 5 (1837) (derived from 18 Eliz. c. 7). It was not until 1923 that North Carolina began distinguishing the age of the defendant as compared to the victim, but only when the victim was "virtuous."[2] In 1949, the jury was statutorily given the option of sentencing a defendant to a life term of imprisonment instead of the death penalty. 1949 N.C. Sess. Laws ch. 299, § 4. In 1973, the crime of rape was divided into two degrees, with the death sentence available for first degree rape, and a life sentence or term of years for second degree rape. 1973 N.C. Sess. Laws (2d Sess.1974) ch. 1201, § 2. Under this law, a boy of seventeen who engaged in consensual intercourse with a non-virtuous girl of eleven would be guilty of second degree rape, while he would be guilty of first degree rape  exposed to the death penalty  if the girl were virtuous. The death penalty was not completely removed from the statute until 1979 when all sex offenses were clarified, modernized, and consolidated into a single new Article 7A. 1979 N.C. Sess. Laws ch. 682, § 1.
The 1979 revisions constituted a complete overhaul of what had previously had been labeled "Rape and Kindred Offences." The new Article was renamed "Rape and Other Sex Offenses." Among other changes, the "virtuous" language was removed from the *4 first degree rape statute,[3] bringing it closer to its current form. In addition, new statutes were created for first and second degree sex offense, which included cunnilingus, fellatio, anilingus, and anal intercourse, as those terms are included in the definition of "sexual act" contained in the sex offense statutes.[4]
The law prohibiting consensual intercourse between a thirteen, fourteen, or fifteen year old and a person at least six years older (class B1 felony) or at least four but less than six years older (class C felony) was created in 1995. 1995 N.C. Sess. Laws ch. 281, § 1. Despite the numerous changes to the rape statutes over the years, the crimes against nature statute has remained relatively unchanged throughout its existence.
This Court has had an opportunity to interpret the crimes against nature statute post-Lawrence, and repeatedly has found its application permissible when the conduct involved: minors; public conduct; prostitution; or non-consensual, coercive conduct. Whiteley, 172 N.C.App. at 779, 616 S.E.2d at 581; see also State v. Browning, ___ N.C.App. ___, 629 S.E.2d 299 (2006); State v. Pope, 168 N.C.App. 592, 608 S.E.2d 114, disc. review denied, 359 N.C. 413, 612 S.E.2d 636 (2005). The instant case involves both minors and public conduct. Respondent asserts that the General Assembly did not intend to criminalize sexual acts between minors who are less than three years apart in age. He asks this Court to reconcile section 14-177 with sections 14-27.2 (statutory rape), 14-27.4 (statutory sex offense), and 14-202.2 (indecent liberties between minors).
"In matters of statutory construction the task of the Court is to determine the legislative intent, and the intent is ascertained in the first instance `from the plain words of the statute.'" N.C. School Bds. Ass'n v. Moore, 359 N.C. 474, 488, 614 S.E.2d 504, 512 (2005) (quoting Electric Supply Co. v. Swain Electrical Co., 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991)). Our Legislature has amended the level of punishment for a violation of our crimes against nature statute, without making substantial changes to the wording of the statute. In addition, the legislature has substantially overhauled our state's sexual offense statutes, and has revised and amended the statutes on numerous occasions subsequent to the 1979 complete overhaul. The Legislature could have changed the wording or intent of the crimes against nature statute had it chosen to; however it has not created any specific exception where the sexual acts occur between minors who are less than three years apart in age. Even in the wake of Lawrence, our Legislature has chosen not to make this exception. It is the role of our General Assembly to define the elements of a crime. See N.C. Const. Art. I, § 6; In re Greene, 297 N.C. 305, 309, 255 S.E.2d 142, 145 (1979). The role of courts is to interpret statutes not to enact them. We reject defendant's suggestion that we graft age requirements into section 14-177 which the General Assembly has not seen fit to enact.
In interpreting statutes, all "[s]tatutes dealing with the same subject matter must be construed in pari materia, as together constituting one law, and harmonized to give effect to each." Williams v. Williams, 299 N.C. 174, 180-81, 261 S.E.2d 849, 854 (1980) (internal citations omitted). In Williams, the Supreme Court construed North Carolina General Statutes, sections 50-16.1 through-16.8 together, stating, "Each of these sections deals with the same subject matter and constitutes one law  that of alimony  with the common purpose of delineating the statutory rules for the same." Id. at 181, 261 S.E.2d at 854. These statutes are contained wholly within Article 1, Chapter 50. They are sequential, and constitute only a small portion of Article 1. Respondent asks this Court to compare statutes on the same subject matter within all of Chapter 14. However, this comparison is too broad.
*5 Crimes Against Nature is found in Subchapter 7, Article 26  Offenses Against Public Morality and Decency. Statutory Rape and Statutory Sex Offense are not only not found within the same Article, but also are not within the same Subchapter; these offenses are found in Subchapter 3, Article 7A  Rape and Other Sex Offenses. Therefore, it is improper to construe these statutes together. In addition, although Indecent Liberties Between Children falls within the same Article as Crimes Against Nature, sections 14-177 and 14-202.2 are not sequential. Also included in the Article are such statutes as Obstructing Way to Places of Public Worship, Harassing by Repeated Telephoning, and Using Profane or Indecent Language on Public Highways.
Even had respondent and his partner been adults, making the issue of minority immaterial, he would yet have been guilty under section 14-177. The Article in which the crimes against nature statute is found is entitled Offenses Against Public Morality and Decency. Although this is not compelling evidence, we may consider it. See State v. Flowers, 318 N.C. 208, 215, 347 S.E.2d 773, 778 (1986); State v. Anthony, 133 N.C.App. 573, 516 S.E.2d 195 (1999), aff'd, 351 N.C. 611, 528 S.E.2d 321 (2000). Public morals and standards of decency continue to consider public sexual behavior criminal.
It was undisputed that the conduct occurred in a car parked in a bowling alley parking lot. The crimes against nature statute remains applicable where public conduct is involved. See Whiteley, 172 N.C.App. at 779, 616 S.E.2d at 581; compare Lawrence, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (case involved sexual activity in the confines of defendant's private residence). A place is public if it is "open or available for all to use, share, or enjoy." Black's Law Dictionary 1264 (8th ed.2004). A parking lot is available for all to use and is thus a public place. In State v. King, 268 N.C. 711, 151 S.E.2d 566 (1966), the Supreme Court held that intentional exposure of private parts while sitting in a car on a public street where persons were present who could have seen if they had looked constituted the common law offense of indecent exposure, whether actually seen or not. Thus, whether anyone saw respondent engaged in sexual behavior in a parked car in a public parking lot is immaterial to whether he engaged in the activity in a public place.
In the instant case, respondent engaged in sexual conduct prohibited by section 14-177 of the criminal code, by engaging in sexual behavior deemed unnatural by our precedents. "The crime against nature is sexual intercourse contrary to the order of nature. It includes acts with animals and acts between humans per anum and per os." State v. Harward, 264 N.C. 746, 746, 142 S.E.2d 691, 692 (1965). This Court "has `no authority to overrule decisions of [the] Supreme Court and [has] the responsibility to follow those decisions "until otherwise ordered by the Supreme Court."'" Dunn v. Pate, 334 N.C. 115, 118, 431 S.E.2d 178, 180 (1993) (citation omitted). Respondent was a minor who engaged in sexual behavior between humans per os and in a public place. He was found delinquent for his behavior and punished accordingly.
Because the crimes against nature statute remains applicable in cases involving minors and public conduct, the statute was constitutionally applied to respondent. We therefore find no error.
No error.
Judge STEELMAN concurs.
Judge ELMORE dissents in a separate opinion.
ELMORE, Judge, dissenting.
For the reasons stated below, I respectfully dissent from the majority opinion.
As noted by the majority, the issue on appeal is whether N.C. Gen.Stat. § 14-177 applies to the facts of the instant case. Section 14-177 provides "If any person shall commit the crime against nature, with mankind or beast, he shall be punished as a Class I felon." N.C. Gen.Stat. § 14-177 (2005). Our courts have interpreted this offense as "broad enough to include all forms of oral and anal sex, as well as unnatural acts with animals." State v. Stiller, 162 N.C.App. 138, 140, 590 S.E.2d 305, 307 (citing State v. Joyner, 295 N.C. 55, 66, 243 S.E.2d 367, 374 *6 (1978)), disc. review denied, 358 N.C. 240, 596 S.E.2d 19 (2004).
An interpretation of this statute involves more than simply considering the plain language therein. In interpreting a statute, this Court must first determine the legislature's intent in enacting that statute. State v. Roache, 358 N.C. 243, 273, 595 S.E.2d 381, 402 (2004). All statutes addressing the same subject matter must be interpreted in pari materia and harmonized if possible through a reasonable and fair construction. Faulkner v. New Bern-Craven County Bd. of Educ., 311 N.C. 42, 58, 316 S.E.2d 281, 291 (1984). This rule of interpretation does not require that the two statutory provisions be in the same subchapter or article, only that they "relat[e] to the same subject matter." Id.; see also Gravel Co. v. Taylor, 269 N.C. 617, 620, 153 S.E.2d 19, 21 (1967).[5]
Where a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded. . . . Interpretations that would create a conflict between two or more statutes are to be avoided, and statutes should be reconciled with each other whenever possible.
Velez v. Dick Keffer Pontiac-GMC Truck, Inc., 144 N.C.App. 589, 593, 551 S.E.2d 873, 876 (2001) (internal quotations and citations omitted). Also, when two statutory enactments are in apparent conflict, the more specific statute controls over the more general one. Furr v. Noland, 103 N.C.App. 279, 281, 404 S.E.2d 885, 886 (1991).
Respondent asserts that the legislative scheme directed at sexual conduct involving minors establishes that the General Assembly did not intend to criminalize sexual acts between minors who are less than three years apart in age. As the crime against nature statute must be viewed in context with other statutes on the same subject matter in Chapter 14, a review of the relevant statutes regulating the sexual conduct of minors is critical to an analysis of respondent's argument.
Our General Statutes contain four offenses specifically directed at sexual conduct involving minors where there is no element of force or coercion: first-degree rape, first-degree sexual offense, statutory rape or sexual offense, and indecent liberties between children. This Court has previously articulated the legislative intent behind the enactment of the first-degree rape statute, N.C. Gen.Stat. § 14-27.2(a)(1):
The General Assembly saw fit to punish as first-degree rape any vaginal intercourse with a child under thirteen by someone at least twelve and at least four years older than the victim. G.S. 14-27.2(a)(1). This legislation protects children under thirteen who, because of their age, are deemed incapable of defending themselves from the sexual advances of others at least four years older than the victim. Children under thirteen are usually physically and emotionally less mature than persons several years older than they are. They do not have the physical or mental ability to repel attack by someone at least twelve and at least four years older than themselves.
State v. Vanstory, 84 N.C.App. 535, 538, 353 S.E.2d 236, 237, disc. review denied, 320 N.C. 176, 358 S.E.2d 67 (1987). The intent behind the legislative enactment of the first-degree rape statute in its current chapter of our General Statutes is indicative of the intent behind the other offenses involving minors in Chapter 14 as well: first-degree sexual offense has an age differential of four years or more. See N.C. Gen.Stat. § 14-27.4(a)(1) (2005). Statutory rape or sexual offense requires that the defendant be at least four years older than the victim. See N.C. Gen. Stat. § 14-27.7A (2005). Indecent liberties between children includes an age differential *7 of at least three years. See N.C. Gen.Stat. § 14-202.2 (2005). Where there is force involved, however, the General Assembly did not see fit to include an age requirement. See, e.g., N.C. Gen.Stat. § 14-27.5(a)(1) (2005) (defendant is guilty of second-degree sexual offense if he engages in a sexual act "[b]y force and against the will of the other person[.]"). According to this legislative scheme, our General Assembly has expressed its intent to regulate sexual acts between minors only in those situations involving force or in which the age differential between the minors potentially allows some aspect of coercion, whether psychological or physical. The General Assembly has chosen not to criminalize vaginal intercourse between two minors less than four years apart in age or oral sex between two minors less than three years apart in age.
Here, respondent is two years and ten months older than O.P.M. Therefore, he does not fit into the statutory requirements of first-degree rape, first-degree sexual offense, statutory rape or sexual offense, or indecent liberties between children. As there is no allegation of force, neither does he fit into the requirements for second-degree sex offense. The facts and circumstances of the instant case most closely resemble the essential elements of indecent liberties between children, a misdemeanor offense involving two minors at least three years apart in age. See N.C. Gen.Stat. § 14-202.2 (2005). However, respondent was alleged to have committed the felony of crime against nature. If this Court is to interpret the application of the crime against nature statute according to the intent of the General Assembly, we must consider whether this statute conflicts with the other statutes regulating sexual conduct of minors in Chapter 14.
The General Assembly revised rape offenses and enacted the first-degree rape provisions of Chapter 14 in 1979. See 1979 N.C. Sess. Laws 682, § 1. As stated supra, the intent behind this legislation was, in part, to protect minors under the age of thirteen from the coercive influence of minors several years older than them in the context of sexual intercourse. The General Assembly reaffirmed this statutory purpose with the enactment of the "Indecent liberties between children" statute in 1995. See 1995 N.C. Sess. Laws 494, § 1. This enactment protects a minor from another minor under the age of sixteen and who is at least three years older. The crime against nature statute contains no age requirements whatsoever, in contrast to the age differential element of the indecent liberties with children statute. To the extent that the crime against nature statute is in conflict with the more recent and specific statute on indecent liberties between children, section 14-202.2, it must yield. Also, no other statute in Chapter 14 criminalizes sexual intercourse between minors less than three years apart in age where no force is alleged. Thus, to construe the crime against nature statute broadly to include any age difference between minors is to violate the rule of construction that statutes on the same subject matter are to be interpreted in harmony with each other whenever possible. See Faulkner, 311 N.C. at 58, 316 S.E.2d at 291.
The State points out that the crime against nature statute has been held constitutional on its face. See, e.g., State v. Whiteley, 172 N.C.App. 772, 778-79, 616 S.E.2d 576, 580-81 (2005). The State contends that, based upon Whiteley and Lawrence v. Texas, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), the crime against nature statute may be applied to regulate any conduct of minors. In Whiteley, this Court noted that following the United States Supreme Court's decision in Lawrence, the application of N.C. Gen.Stat. § 14-177 is unconstitutional when applied to conduct between consenting adults in private. Id. at 779, 616 S.E.2d at 581. However, the application of this statute is permissible where legitimate state interests exist in prohibiting the underlying conduct, including: conduct involving minors, conduct in public, prostitution, or non-consensual, coercive conduct. Id. at 778-79, 616 S.E.2d at 581; see also Lawrence, 539 U.S. at 578, 123 S.Ct. at 2483-84, 156 L.Ed.2d at 525. The defendant in Whiteley argued that in order for the application of the crime against nature statute to be constitutional as applied to his act of cunnilingus with another adult, the jury must find beyond a reasonable doubt it was non-consensual. Whiteley, 172 N.C.App. at *8 779, 616 S.E.2d at 581. This Court agreed, holding that section 14-177 was unconstitutional as applied to the facts because the jury did not find that the sexual act, committed by two adults in a private residence, was non-consensual. Id. at 780, 616 S.E.2d at 581.
We agree with the State that conduct involving minors is a legitimate state interest explicitly acknowledged in Lawrence. However, we disagree with the State that all conduct between minors may be regulated by the crime against nature statute, without regard to the circumstances. The State may punish sexual intercourse or sexual offenses where the victim is under thirteen years old and the defendant is at least twelve years old and at least four years older than the victim, or indecent liberties where the defendant is under the age of sixteen and the victim is at least three years younger. Also, the State may punish statutory rape, where the victim is thirteen, fourteen, or fifteen and the defendant is at least four years older. But our General Assembly has dictated that there is no legitimate state interest in the regulation of minors less than three years apart in age, absent the use of force. Where, as here, the two minors are less than three years apart in age and there is no evidence of force, the General Assembly did not intend that the conduct be criminalized.
In sum, I would hold that the General Assembly did not intend that the conduct of respondent and O.P.M. be subject to criminal regulation. Accordingly, I would reverse the juvenile adjudication and disposition orders entered by the trial court.
NOTES
[1] "Any person who shall commit the abominable and detestable crime against nature, not to be named among christians, with either man or beast, shall be adjudged guilty of felony, and shall suffer death without benefit of clergy." N.C.Rev.Stat. ch. 34, § 6 (1837) (derived from 25 Hen. VIII, c. 6 and 5 Eliz., c. 17).
[2] "[A]ll persons charged with a violation of [the law prohibiting a male person from carnally knowing a female child over twelve and under sixteen years of age, who has never before had sexual intercourse with any person, and prohibiting any female person from carnally knowing any male child under the age of sixteen] shall be subject to the jurisdiction of the juvenile court. . . and shall be classed as delinquents and not as felons: Provided . . . that any male person convicted of the violation of this [same law], who is under eighteen (18) years of age, shall be guilty of a misdemeanor only." 1923 N.C. Sess. Laws ch. 140, § 2.
[3] "A person is guilty of rape in the first degree if the person engages in vaginal intercourse: . . . (2) [w]ith a victim who is a child of the age of 12 years or less and the defendant is four or more years older than the victim." 1979 N.C. Sess. Laws ch. 682, § 1, § 14-27.2(a)(2).
[4] For a comprehensive review of the changes resulting from the 1979 revisions, see Benjamin H. Flowe, Jr., Lawrence K. Rynning, Elizabeth Garland Sarn, Survey of Developments in North Carolina Law, 1979, 58 N.C. L.Rev. 1181, 1394-1403 (1980).
[5] The majority suggests that because first-degree rape and first-degree sexual offense are contained within Subchapter III, Article 7A, whereas crime against nature is contained within Subchapter VII, Article 26, these statutes may not be considered in pari materia. But the appropriate determinant of whether to consider these statutes together is the subject matter. As I conclude that they relate to the same subject matter, that is, sexual conduct involving minors, it is proper to harmonize them if possible through a reasonable and fair interpretation.