**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 07-1194**

_____

COVENANT MEDIA OF NORTH CAROLINA, L.L.C.; MEI YONG "BILLY" XIAO; CHINA BUFFET, L.L.C.,

          Plaintiffs - Appellants,

     v.

CITY OF MONROE, NORTH CAROLINA,

          Defendant - Appellee.

_____

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Graham C. Mullen, Senior District Judge. (3:04-cv-00586)

_____

Argued: March 19, 2008               Decided: July 18, 2008

_____

Before NIEMEYER and KING, Circuit Judges, and David R. HANSEN, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

_____

Affirmed by unpublished opinion. Senior Judge Hansen wrote the opinion, in which Judge Niemeyer and Judge King joined.

_____

**ARGUED:** Edward Adam Webb, WEBB LAW GROUP, L.L.C., Atlanta, Georgia, for Appellants. William David Brinton, ROGERS TOWERS, P.A., Jacksonville, Florida, for Appellee. **ON BRIEF:** Kari R. Johnson, Patrick H. Flanagan, CRANFILL, SUMNER & HARTZOG, L.L.P., Charlotte, North Carolina; Ruth Holmes, ROGERS TOWERS, P.A., Jacksonville, Florida, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

HANSEN, Senior Circuit Judge:

Covenant Media of North Carolina, L.L.C. ("Covenant"), Mei Yong "Billy" Xiao, and China Buffet, L.L.C. (collectively referred to as "the Appellants") appeal the district court's grant of summary judgment in favor of the City of Monroe ("Monroe" or "the City") in this suit challenging the constitutionality of the City's sign ordinance. We affirm.

I.

In July and August of 2004, Covenant, a company in the business of erecting and operating advertising signs for various businesses and organizations, leased property in Monroe from Mei Yong "Billy" Xiao and his business the China Buffet, L.L.C., for the purpose of erecting billboards. The Appellants applied for seven advertising sign permits, and within five days of submission, the City denied the applications on grounds that the proposed billboards violated the City's sign regulations, which restrict the size, location, and spacing of billboards. Specifically, the City stated that the area of each proposed billboard totaled 672 square feet per side, in violation of the size restriction limiting the area of billboards to 250 square feet per side. (J.A. at 116.) See City of Monroe Land-Use Ordinance § 156.133(S)(2)(a) (J.A. at 66). Also, all but one of the proposed sign locations placed the proposed billboards within 1,000 feet of a preexisting billboard,

3

and the site plan for the proposed China Buffet billboard placed it within 50 feet of a building, all contrary to the City's billboard location setback and spacing restrictions. See City of Monroe Land-Use Ordinance § 156.133(S)(2)(c)(i), (iii) (J.A. at 66, 67).

The Appellants brought suit in November 2004 on First Amendment grounds, claiming, in relevant part, that the City's ordinance unconstitutionally favors commercial speech, lacks procedural safeguards, grants City officials an impermissible level of discretion, is overbroad in its application, and contains improper time, place, and manner restrictions. They sought damages and injunctive relief[*] pursuant to 42 U.S.C. § 1983 (2000). The City moved for summary judgment, asserting that the Appellants lacked standing to challenge any provisions of the ordinance other than those that formed the basis of the City's denial of their permit applications. The district court granted summary judgment to the City, concluding that the Appellants suffered no constitutional injury to satisfy Article III standing requirements because the "permits were denied on the content-neutral and constitutionally valid restrictions of height [size], setback and spacing." (J.A. at 289.) The district court also rejected the Appellants' overbreadth challenge for lack of injury in fact.

---

[*]The Appellants withdrew their request for injunctive relief after the City adopted a new sign ordinance in April 2006, and they do not challenge the new ordinance in this appeal. All references to the City's sign regulations in this opinion refer to the older version.

II.

We review de novo the district court's grant of summary judgment, applying the same standards as the district court and construing the facts in the light most favorable to the nonmoving party. Darveau v. Detecon, Inc., 515 F.3d 334, 338 (4th Cir. 2008); see also Fed. R. Civ. P. 56(c) (summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law"). We also apply de novo review to the district court's legal conclusions regarding Article III standing. See Covenant Media of S.C., L.L.C. v. City of N. Charleston, 493 F.3d 421, 428 (4th Cir. 2007), cert. denied, 128 S. Ct. 914 (2008).

As an initial matter, the Appellants assert that the district court impermissibly made factual findings and failed to draw inferences from the record in their favor, citing the district court's factual recitation of background material relating to other businesses owned by Covenant's owners and their litigation strategies in other states. After carefully reviewing the record in this case, we conclude that the district court did not improperly resolve any genuine issues of material fact. The disputed background material was not essential to the district court's legal conclusions, and there is no dispute regarding the material facts of this case. The Appellants sought to erect billboards in Monroe that violated the ordinance's size, location,

and spacing restrictions, and the City promptly rejected each application on these grounds. Any matters dealing with the business or litigation practices of Covenant's owners and their other business ventures are not material to the resolution of this dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); see also Drewitt v. Pratt, 999 F.2d 774, 778 (4th Cir. 1993)(same). The Appellants have not identified any genuine issue of material fact that precludes summary judgment in this case.

The Appellants assert that the district court's standing analysis is flawed because the court addressed the merits of their constitutional claims in concluding that they lacked standing. We agree that it is inappropriate to first consider the merits of a claim when determining whether a party has standing under Article III of the Constitution. See Warth v. Seldin, 422 U.S. 490, 500 (1975) (noting that "standing in no way depends on the merits" of the claim); Covenant Media of S.C., 493 F.3d at 429 (holding that the standing analysis must not be confused with the merits of a case because "[a] plaintiff's standing to bring a case does not depend upon his ultimate success on the merits underlying his case"). On the other hand, we also acknowledge the reality that, "because standing is addressed on a claim by claim basis, an

6

unfavorable decision on the merits of one claim may well defeat standing on another claim if it defeats the plaintiff's ability to seek redress." Get Outdoors II, L.L.C. v. City of San Diego, 506 F.3d 886, 893 (9th Cir. 2007). Despite any flaws in the district court's analysis, we "can affirm on any basis fairly supported by the record." Eisenberg v. Wachovia Bank, N.A., 301 F.3d 220, 222 (4th Cir. 2002). After carefully reviewing the record and the parties' arguments, we find no reversible error, and for the reasons that follow, we conclude that the district court reached the correct result in granting summary judgment to the City.

It is well established that standing is a threshold jurisdictional issue that must be determined first because "[w]ithout jurisdiction the court cannot proceed at all in any cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (internal quotation marks omitted); see also Pye v. United States, 269 F.3d 459, 466 (4th Cir. 2001) (citing Steel Co., 523 U.S. at 102). The "irreducible constitutional minimum of standing" consists of three elements. Lujan v Defenders of Wildlife, 504 U.S. 555, 560 (1992). First, there must be "an 'injury in fact'–an invasion of a legally protected interest" that is both "concrete and particularized" as well as "actual or imminent." Id. (internal quotation marks omitted). "Second, there must be a causal connection between the injury and the conduct complained of" such that the injury can be said "to be fairly traceable" to the

7

defendant's actions. Id. (internal quotation marks omitted). Third, there must be a likelihood "that the injury will be redressed by a favorable decision." Id. (internal quotation marks omitted); see also Covenant Media of S.C., 493 F.3d at 428.

When challenging an ordinance, even though "there is broad 'latitude given facial challenges in the First Amendment context,' a plaintiff must establish that he has standing to challenge each provision of an ordinance by showing that he was injured by application of those provisions." Id. at 429-30 (quoting Gonzales v. Carhart, 127 S. Ct. 1610, 1639 (2007)). Thus, a finding that a plaintiff has standing to bring suit challenging one provision of an ordinance "does not provide it a passport to explore the constitutionality of every provision of [a] [s]ign [r]egulation." Id. at 429. Accordingly, we must consider standing independently with regard to each provision challenged.

We first address whether the Appellants have standing to assert an as-applied challenge to the size restriction. There is no dispute that (1) the City denied the Appellants' permit applications--a concrete injury; (2) this denial was the direct result of the City applying the sign ordinance's 250-square-foot size restriction--causation; and (3) there is a likelihood of redress from a favorable decision by this court if the provisions challenged are all found to be unconstitutional. But cf. Maverick Media Group, Inc. v. Hillsborough County, Fla., No. 07-12330, 2008

8

WL 2130477 (11th Cir. May 22, 2008)(and cases cited therein indicating that a sign permit applicant lacks a redressable injury to challenge the constitutionality of a sign ordinance where the permit could have been denied on the basis of some alternate but unchallenged regulation). The Appellants challenged all three bases for the denial of their permit applications, thus there is a likelihood of redressability unless one of the grounds for denial is found to be constitutional. We conclude that they have standing to challenge the size restriction.

Billboards are subject to reasonable time, place, and manner restrictions. "[W]e begin with the venerable principle that 'each medium of expression must be assessed for First Amendment purposes by standards suited to it, for each may present its own problems.'" Arlington County Republican Comm. v. Arlington County, 983 F.2d 587, 591 (4th Cir. 1993) (alterations omitted) (quoting S.E. Promotions, Ltd. v. Conrad, 420 U.S. 546, 557 (1975)). Billboards are large, permanent structures, designed to stand out, and thus they "create[] a unique set of problems for land-use planning and development." Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 502 (1981) (plurality). In this context, the Supreme Court has "observed that time, place, and manner restrictions are permissible if they are justified without reference to the content of the regulated speech, serve a significant governmental interest, and leave open ample alternative channels for communication of the

information."  Id. (internal quotation marks and alterations omitted).

The sign ordinance at issue defines billboards as off-premises, outdoor structures of display, either freestanding or attached to a building, see City of Monroe Land-Use Ordinance § 156.14 (J.A. at 73), without any distinction based on the content of the messages displayed.  The prohibition of billboards exceeding 250 square feet in area per side likewise makes no content-based distinctions.  Id. § 156.133(S)(2)(a) (J.A. at 66).  There is no dispute that billboards may include either commercial or noncommercial messages and that all billboards are subject to this size restriction.  We conclude that the City's billboard size restriction is a content-neutral regulation.

The Appellants assert that the ordinance is content-based due to distinctions born out of the definition of "on-premise" and "off-premise" signs in section 156.133(C) of the ordinance. (J.A. at 53.)  They argue that these underlying definitions result in more favorable spacing and location restrictions for on-premises commercial signs, but they point to no more favorable size restrictions to support their argument.  In fact, the on-premises commercial size limitations are much more restrictive, and neither commercial on-premises signs nor any off-premises signs are permitted to exceed the 250-square-foot size restriction that applies to all billboards.

The Appellants assert that the size restriction is not narrowly tailored to meet a substantial government interest, but again, the record does not support their assertion. The express purpose of the ordinance is to maintain public and traffic safety and to enhance the aesthetic appearance and attractiveness of the community. See City of Monroe Land-Use Ordinance § 156.133(A) (J.A. at 53). Settled authority in this circuit, as well as in the Supreme Court, recognizes that, in the context of billboards, safety and aesthetics are substantial government interests, and that "'a city may justifiably prohibit all off-premise signs or billboards for aesthetic and safety reasons.'" Nat'l Adver. Co. v. City of Raleigh, 947 F.2d 1158, 1168 (4th Cir. 1991) (quoting Major Media of the S.E. v. City of Raleigh, 792 F.2d 1269, 1272 (4th Cir. 1986), which cites Metromedia, 453 U.S. at 508-11), cert. denied, 504 U.S. 931 (1992); see also Arlington County Republican Comm., 983 F.2d at 591 (noting that in the Supreme Court's Metromedia decision, "without an impermissible preference of commercial speech over noncommercial speech, seven Justices would have upheld the prohibition on billboards as an acceptable means to promote aesthetics and traffic safety."); Naegele Outdoor Adver., Inc. v. City of Durham, 844 F.2d 172, 173-74 (4th Cir. 1988) (finding no free speech violation where the ordinance banned all commercial, off-premises billboards and avoided any preference of commercial over noncommercial speech).

The content-neutral 250-square-foot size limitation furthers the City's substantial interests in traffic safety and aesthetics by permitting billboards only in certain areas and limiting their size. The City's size restriction is "not substantially broader than necessary to protect the [C]ity's interests in traffic safety and aesthetics, and directly advance[s] the [C]ity's interests"; additionally, it leaves open ample alternative avenues of communication by not banning all billboards. See Get Outdoors II, 506 F.3d at 894. We conclude that the size restriction is constitutional, and each one of the Appellants' permit applications was properly rejected on this ground.

Our conclusion on the merits of the constitutional challenge to the size restriction defeats standing on the Appellants' remaining as-applied claims. Because the permit applications were properly denied on the basis of the independently constitutional size restriction, the Appellants lack a redressable constitutional injury to support their challenges to the location and spacing restrictions. See id. at 893 (finding no redressability and thus not reaching additional challenges to an ordinance after one restriction was found to be constitutionally valid); Covenant Media of S.C., 493 F.3d at 430 (finding no constitutional injury where the permit applications could not be approved due to an unchallenged spacing violation, regardless of whether other substantive provisions are held to be unconstitutional).

12

The Appellants also assert a facial overbreadth claim, arguing that they should have been permitted to challenge other provisions of the ordinance. The overbreadth doctrine constitutes "'a departure from traditional rules of standing'" by permitting an individual to challenge a regulation on the theory that it threatens the speech of others. Giovani Carandola, Ltd. v. Bason, 303 F.3d 507, 512 (4th Cir. 2002) (quoting Broadrick v. Oklahoma, 413 U.S. 601, 613 (1973)). It does not, however, eliminate the need to demonstrate an injury in fact. See Peterson v. Nat'l Telecomm. & Info. Admin., 478 F.3d 626, 634 (4th Cir. 2007). Only those "who have suffered some injury from the application of the contested provisions to begin with" may bring an overbreadth challenge. See id. (internal quotation marks omitted). Here, because the permit applications were timely denied on the basis of a valid size restriction, the Appellants cannot demonstrate an injury in fact or redressability under any other provision of the ordinance. See Covenant Media of S.C., 493 F.3d at 430 (noting that because the application violated the unchallenged spacing requirement, it could not have been approved regardless of whether other provisions could be found to be unconstitutional, and thus, there was no substantive constitutional injury due to other provisions that might have been unconstitutional); see also Advantage Media, L.L.C. v. City of Eden Prairie, 456 F.3d 793, 801 (8th Cir. 2006) (finding that the plaintiff had no standing to

challenge restrictions or procedures that were not factors in the denial of its own permit applications).

The Appellants argue that the prospect of a prior restraint of speech due to a lack of procedures in the permit application process and the unbridled discretion of City officials can constitute an actual injury for an overbreadth challenge. The Supreme Court has "long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." City of Lakewood v. Plain Dealer Publ'g. Co., 486 U.S. 750, 755-56 (1988). The injury arises in that instance from the prospect of self censorship; "the mere existence of the licensor's unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech." Id. at 757; see Prime Media, Inc. v. City of Brentwood, 485 F.3d 343, 351 (6th Cir. 2007) (holding that "the prospect of prior restraint and resulting self-censorship can itself constitute the required actual injury" for Article III standing purposes).

The Appellants do not assert that they were intimidated into censoring their own speech. To the contrary, they submitted to the permit process, and the record establishes that the City denied their permit applications in a timely manner in part on the basis

14

of the billboard size restriction, which we have found to be constitutional. No change in the permit procedures would result in the approval of their applications to erect oversized billboards. There is no suggestion that they intend to file future applications that would comply with the size restriction or that they are fearful to submit such an application. See Get Outdoors II, 506 F.3d at 895 (holding plaintiff lacked standing to bring a prior restraint claim where its applications were denied on constitutionally valid grounds and the plaintiff did not show an intent to file permit applications that comply with the valid requirements). Thus, the Appellants suffer no threat of prior restraint and lack standing to bring the claim.

## III.

Accordingly, we affirm the district court's grant of summary judgment in favor of the City.

AFFIRMED

15